# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN WILLIAMS, | : | Civil No. 3:16-cv-1259 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| CORRECT CARE SOLUTIONS, INC., et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Calvin Williams ("Williams"), an inmate who, at all relevant times, was housed at the State Correctional Institution at Houtzdale, Pennsylvania ("SCI-Houtzdale"), initiated the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Sommers, Glunt, Younkin, Beard, Wetzel, Dr. Khatri, Dr. Naji, and Correct Care Solutions, Inc. (*Id.*). Presently pending before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant Dr. Khatri, and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Dr. Naji and Correct Care Solutions. (Docs. 27, 28). Despite requesting an extension of time to file briefs in opposition to moving Defendants' motions, Williams failed to oppose the motions. (Docs. 33, 34). Consequently, the motions are deemed unopposed and ripe for disposition. *See* L.R. 7.6 ("Any party opposing any motion . . . shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion"). For the reasons set forth below, the

Court will grant each of the pending motions.

I.  **Motion to Dismiss Standard of Review**

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II. **Allegations of the Complaint**

During his incarceration at SCI-Houtzdale, Williams alleges that he presented to Dr. Khatri in April 2011 with complaints of difficulty sleeping, anxiety, and racing thoughts.

3

(Doc. 1, ¶ 15). He alleges that Dr. Khatri immediately prescribed the psychotropic medication Remeron. (*Id.*). On or about August 11, 2011, Williams claims that Dr. Khatri prescribed Tegretol. (*Id.* at ¶ 17). On August 15, 2011, Williams alleges that Dr. Khatri increased his dosage of Tegretol, and at a later, unspecified date, again increased the dosage of Tegretol. (*Id.* at ¶¶ 18-19). Williams alleges that, in September 2011, he "awoke feeling extremely fatally ill", with "burning, throbbing" eyes, hives, nausea, disorientation, and difficulty walking. (*Id.* at ¶ 21). Williams was immediately taken to the medical department, where he was assessed by "the medical staff" and prescribed moisturizing eye drops. (*Id.* at ¶ 22). He claims that his condition failed to improve and he was sent to an outside hospital on September 3, 2011. (*Id.* at ¶ 26). Once at the hospital, he was allegedly diagnosed with Stevens-Johnson syndrome (*Id.*). The hospital staff advised Williams that his symptoms were a reaction to Tegretol. (*Id.* at ¶ 28). Accordingly, this medication was discontinued. (*Id.* at ¶ 31). Williams returned to SCI-Houtzdale on September 7, 2011. (*Id.* at ¶ 30). He was placed in the prison infirmary for three weeks, and was prescribed eye drops, ointment for his hives, intravenous fluids, and "some kind of oral tablets." (*Id.*).

Williams alleges that Dr. Khatri "knew or should have known that plaintiff would allergically react negatively to the TEGRETOL and the prescribed dosages further based upon a number of factors, especially with plaintiff[']s previous medical history." (*Id.* at ¶ 32).

Subsequent to his hospitalization, Williams alleges that Dr. Naji failed to "adequately address the underlying cause of the painful symptoms." (*Id.* at ¶¶ 34-35). He asserts that Dr. Naji referred Williams to an ophthalmologist "many months" later. (*Id.* at ¶ 37). Williams further alleges that Dr. Naji delayed treatments and failed to comply with all of the treatments ordered by the ophthalmologist. (*Id.* at ¶¶ 36-39).

## III. Discussion

### A. Williams' claims are barred by the doctrine of Res Judicata

The preclusive effect given to prior adjudications under the doctrine of res judicata "is not a mere matter of 'practice or procedure' but 'a rule of fundamental and substantial justice.'" *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990) (quoting *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917). "Res judicata avoids 'the expense and vexation attending multiple law suits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.'" *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

Res judicata comprehends both "claim preclusion" and "issue preclusion." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 77 n.1 (1984). Claim preclusion "applies to all claims actually brought or which could have been brought in a prior action regardless of whether they were asserted or determined in the prior proceeding." *Inofast Mfg., Inc. v. Bardsley*, 103 F. Supp. 2d 847, 849 (E.D. Pa. 2000), *aff'd mem.*, 265 F.3d 1055 (3d Cir.

5

2001). Issue preclusion, also known as collateral estoppel, "bars relitigation only of an issue identical to that adjudication in the prior action." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990). The party asserting claim preclusion must establish "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Inofast*, 103 F. Supp. 2d at 849; *see also Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1086 (3d Cir. 1988). Each requirement for claim preclusion is present in the instant case. Williams has had previous opportunities to litigate his claims that he was improperly prescribed psychiatric medications by Dr. Khatri, which caused him to suffer from Stevens-Johnson syndrome, and that Dr. Naji scheduled Williams for an appointment with an ophthalmologist, the appointment took place several months after September 2011, and Dr. Naji followed some, but not all, of the ophthalmologist's orders and recommendations.

On September 6, 2013, Williams initiated a lawsuit in the United States District Court for the Western District of Pennsylvania, naming Drs. Naji and Khatri as Defendants and setting forth nearly identical allegations.[1] *See Williams v. Dr. Naji, et al.*, Civil No. 3:13-cv-205 (W.D. Pa). In the Western District case, Williams alleged that he suffered from painful symptoms as a result of an allergic reaction called Stevens-Johnson syndrome due

---

[1] Williams did not name Correct Care Solutions as a defendant in the Western District case. Correct Care Solutions was not the medical provider for the Department of Corrections ("DOC") during the relevant time period. Correct Care Solutions began providing health care services for DOC facilities on September 1, 2014. (Doc. 29-2, p. 3).

6

to the medication prescribed by Dr. Khatri in August 2011. *See id.* at (Doc. 19). He claimed that Dr. Khatri increased his dosages of medication which resulted in extreme illness and hospitalization in September of 2011. *See id.* Williams further alleged that Dr. Naji scheduled Williams for an appointment with an ophthalmologist, and the appointment took place "several months" after September 2011. (*Id.* at ¶ 33). He claims that Dr. Naji followed "some but not all of" the ophthalmologist's treatment orders and recommendations. (*Id.* at ¶ 35).

On August 6, 2015, a Magistrate Judge for the Western District of Pennsylvania issued a Report and Recommendation recommending in part:

- The claims of deliberate indifference and negligence against Khatri survive until August 26, 2015 when, barring submission of new evidence, summary judgment should be entered for Khatri for procedural default; barring a showing that expert testimony is unnecessary, summary judgment should be entered for Khatri on the negligence claim because Williams has chosen not to offer expert testimony.

- The claim of deliberate indifference against Naji should be dismissed.

- The claim of negligence against Naji survives until August 26, 2015 when, barring a showing that expert testimony is unnecessary, summary judgment should be entered for Naji on the negligence claim because Williams has chosen not to offer expert testimony.

(Doc. 29-4, pp. 12-13; Doc. 31-1, pp. 19-20). *See also Williams v. Dr. Naji, et al.*, 2015 WL 12734041, *5 (W.D. Pa. Aug. 6, 2015).

On August 31, 2015, the District Court Judge for the Western District of

7

Pennsylvania entered an Order granting Defendants' motions to dismiss and adopting the Report and Recommendation as the Opinion of the Court. (Doc. 29-5, pp. 1-2; Doc. 31-1, pp. 21-22).

Williams' present claims are substantially repetitive of the claims brought in the Western District of Pennsylvania case. *Compare* (Doc. 1) *with Williams v. Dr. Naji, et al.*, Civil No. 3:13-cv-205 (W.D. Pa) (Doc. 19). Inasmuch as Williams is attempting to appeal the decision of the Western District Court, this Court is not the proper forum for appealing the findings of a sister court. Consequently, the present suit will be dismissed.

## B. Williams' action is barred by the statute of limitations

Even if Williams' claims were not barred by the doctrine of res judicata, this lawsuit would still be barred on another, independent ground, the statute of limitations. The running of the statute of limitations is an affirmative defense. *See* FED. R. CIV. P. 8(c)(1). A complaint is subject to dismissal on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996). In Pennsylvania, the statute of limitations for a personal injury action is two years. *See* 42

Pa. C.S. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. *Sameric Corp. of Delaware. Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. The "continuing violations doctrine" is an "equitable exception to the timely filing requirement." *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). Under the continuing violations doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Cowell*, 263 F.3d at 292 (quoting *Brenner v. Local 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991)). The doctrine will apply only where the plaintiff can establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292 (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995)).

This inquiry involves consideration of three factors: "(1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) the degree of permanence-whether the act had a degree of

9

permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *Cowell*, 263 F.3d at 292. The consideration of 'degree of permanence" is the most important of the factors. *Cowell*, 263 F.3d at 292 (citing *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983)).

In the instant action, Williams requests this Court to entertain a federal civil rights lawsuit filed in June 2016, stemming from medical care provided in 2011 and 2012. This complaint, which was filed more than four years after medical treatment, would plainly be time-barred under the statute of limitations. Williams cannot save these time-barred claims by resort to the continuing violation theory. The complaint speaks unambiguously to this issue when it alleges that Williams suffered harm as a result of alleged inadequate medical care in 2011 and 2012. Additionally, Williams flied a grievance on April 3, 2012 related to the alleged inadequate medical care in 2012. Williams was plainly on notice of his purported injuries, at the very latest, in 2012. Therefore, there clearly are no grounds for tolling the statute of limitations beyond 2012 on a continuing offense theory, and Williams' claims are time-barred.

## C. Exhaustion of Administrative Review[2]

In addition, the Court finds that Williams' claims against Defendants Khatri and Correct Care Solutions are subject to dismissal for failure to utilize the DOC's Inmate Grievance System with respect to any claims against these Defendants. Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, *see Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*

---

[2] In *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit addressed the issue of whether the defendants in *Spruill* properly identified their motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court noted that "[g]iven that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment." *Id.* at 223 (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003)). *See also Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss"); *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002) (motions to dismiss may be pursued on failure to exhaust grounds in certain circumstances). Accordingly, the Court will consider the Department of Corrections' policies and inmate grievance records as indisputably authentic documents. *See Spruill*, 372 F.3d at 223 (suggesting that an inmate's grievance records are "indisputably authentic documents").

v. *Nussle*, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. *See Spruill*, 372 F.3d 218. "As for the failure to identify named defendants on the grievance form,...to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And,...in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (non-precedential). An "untimely or otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006). Thus, the PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id.* at 92.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of

confinement. See 37 PA. CODE § 93.9(a); PA. DEP'T OF CORR., No. DC-ADM 804; (see also Doc. 31-1, pp. 23-56). After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. See Booth v. Churner, 206 F.3d 289, 293 n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. See Booth, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Defendants contend that, although Williams completed the grievance process in its entirety for Grievance Number 407008, this grievance did not assert any claims against Dr. Khatri and Correct Care Solutions, and Williams has thus failed to exhaust his administrative remedies with respect to these Defendants.[3] (Doc. 29, pp. 8-11; Doc. 31, pp.

---

[3] In addition, Defendant Correct Care asserts that it was not even under contract with the Department of Corrections to provide medical care in 2011 and 2012. (Doc. 29-2, pp. 3, 10).

13

5-7).

The only grievance that Williams appealed to final review is Grievance Number 407008. In the grievance, Williams stated:

> This DC-ADM 804 is primarily predicated on an[ ] ongoing medical condition. With numerous complexities: note DC-135A, response from medical director Dr. Naji, dated 3-14-2012. About scheduled to see an eye doctor. Since symptoms have been acknowledged by this Houtzdale physician, initial appropriate treatment involving additional examination of my cause for hospitalization have been deliberately negated es[s]enti[]ally, which is an hazardous biological medical problem, as I am still in pain, and the appropriate treatment for the cause of symptoms are not addressed by this physician, or medical department at Houtzdale.

(Doc. 29-6, p. 5; Doc. 31-1, p. 64) (sic).

The facility grievance coordinator denied the grievance and stated, in part:

> Review of Williams' medical record indicates that he has been referred to an Off site Eye Specialist and has been seen four times in the past six months. His last visit to the Ophthalmology Specialist was on 3/29/12. The specialist documented that the left eye was improving but dryness was still noted. Williams was to continue with systane/tears four times a day and as needed and Restasis ophthalmic solutions twice a day was ordered. A follow up appointment with the Specialist was ordered for three months.

(Doc. 29-6, p. 10; Doc. 31-1, p. 69). Williams then filed an appeal to the facility manager. (Doc. 29-6, p. 11; Doc. 31-1, p. 70). In his appeal, Williams did not dispute that he was treated by an ophthalmologist. (*Id.*). His complaint was that "the treatment received by the 'eye specialist' is only to treat the surface ([e]ffects) of the conditions caused by this facility's medical staff, not to treat the cause." (*Id.*). Williams appealed to the Secretary's Office of

14

Inmate Grievances and Appeals ("SOIGA"). (Doc. 29-6, p. 3; Doc. 31-1, p. 62). On July 12, 2012, the SOIGA denied the appeal. (Doc. 29-6, pp. 1-2; Doc. 31-1, pp. 60-61).

Williams failed to name Defendants Khatri and Correct Care Solutions in his grievance. As noted *supra*, the standard used to determine when a prisoner has exhausted the administrative process is whether he complied with applicable grievance procedures and rules. The relevant policy and the pertinent language states as follows:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s) that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s).

DC-ADM 804, § 1(A)(11). Notably, "[t]he inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(11). The purpose of the regulation "is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234. Based upon the DOC administrative remedy records, it is clear that Williams failed to utilize the DOC's Inmate Grievance System with respect to any claims against Defendants Khatri and Correct Care Solutions by failing to identify these Defendants in the grievance.[4]

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must

---

[4] Furthermore, Defendant Khatri notes that Williams' grievance was not filed until April 3, 2012, nearly eight months after Dr. Khatri allegedly prescribed Tegretol. (Doc. 31, p. 7). Pursuant to DOC policy, an inmate "must submit a grievance to the facility grievance coordinator within 15 working days after the event upon which the claim is based." PA. DEP'T OF CORR., No. DC-ADM 804.

15

generally grant leave to amend before dismissing the complaint. See *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)), For the reasons set forth above, and because Williams has failed to oppose the motions to dismiss, granting leave to amend would be futile.

## V. Conclusion

Based on the foregoing, the motions (Docs. 27, 28) to dismiss by Defendants Khatri, Naji, and Correct Care Solutions will be granted. A separate Order shall issue.

Date: August __8__, 2017

Robert D. Mariani
United States District Judge

16