## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CALVIN WILLIAMS, | : | Civil No. 3:16-cv-1259 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CORRECT CARE SOLUTIONS, INC., | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Calvin Williams ("Williams"), an inmate who, at all relevant times, was

housed at the State Correctional Institution at Houtzdale, Pennsylvania ("SCI-Houtzdale"),

and the State Correctional Institution at Waymart, Pennsylvania ("SCI-Waymart"), initiated

the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as

Defendants are Sommers, Glunt, Younkin, Beard, Wetzel, (collectively, "Corrections

Defendants"), Dr. Khatri, Dr. Naji, and Correct Care Solutions, Inc. (*Id.*). Presently pending

before the Court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

by Corrections Defendants. (Doc. 23). Despite requesting an extension of time to file a

brief in opposition to Corrections Defendants' motion, Williams failed to oppose the motion.

(Docs. 33, 34). Consequently, the motion is deemed unopposed and ripe for disposition.

*See* L.R. 7.6 ("Any party opposing any motion . . . shall file a brief in opposition . . . [or] shall

be deemed not to oppose such motion"). For the reasons set forth below, the Court will

grant the motion to dismiss.

## I.    Motion to Dismiss Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

2

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

[E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## II.    **Allegations of the Complaint**

Williams alleges that during his incarceration at SCI-Houtzdale, in September 2011, he was improperly prescribed medication that caused his vision to deteriorate. (Doc. 1, ¶¶

3

17, 40). In September 2011, he "awoke feeling extremely fatally ill", with "burning, throbbing" eyes, hives, nausea, disorientation, and difficulty walking. (*Id.* at ¶ 21). Williams was immediately treated in the medical department, where he was assessed by "the medical staff" and prescribed moisturizing eye drops. (*Id.* at ¶ 22). He claims that his condition failed to improve and he was sent to an outside hospital on September 3, 2011. (*Id.* at ¶ 26). Once at the hospital, he was allegedly diagnosed with Stevens-Johnson syndrome. (*Id.* at ¶ 28). He claims that a doctor at the outside hospital informed him that he was allergic to the medication given at the prison, which caused the vision issues. (*Id.*). Williams returned to SCI-Houtzdale on September 7, 2011. (*Id.* at ¶ 30). He was placed in the prison infirmary for three weeks, and was prescribed eye drops, ointment for his hives, intravenous fluids, and "some kind of oral tablets." (*Id.*).

Williams alleges that Corrections Defendants were deliberately indifferent to his medical needs before and after his treatment at the outside hospital. (Doc. 1, ¶¶ 65, 69, 73). He claims that Corrections Defendants were negligent in the care they provided, they conspired to subject Williams to improper medical care, discriminated against him because of his age, violated his rights t equal protection and due process, and Corrections Defendants' actions were in retaliation for Williams' complaints about not receiving adequate medical care. (*Id.* at ¶¶ 79-82, 95-96, 98-99).

4

## III. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of

action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute

provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95

F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the

violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state

law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Lack of Personal Involvement

Corrections Defendants argue that Williams fails to state a claim against them

because they lack personal involvement in the alleged wrongs. (Doc. 24, pp. 10-12). The

Court finds merit in this argument.

Individual liability can be imposed under section 1983 only if the state actor played

an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the

5

operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil

rights action must have personal involvement in the alleged wrongs. . . . Personal

involvement can be shown through allegations of personal direction or of actual knowledge

and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362

(1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must

be made with appropriate particularity in that a complaint must allege the particulars of

conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at

1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge

or involvement in depriving the plaintiff of his rights is insufficient to establish personal

involvement. *Rode*, 845 F.2d at 1208.

A thorough review of the complaint reveals that there are no allegations against

Corrections Defendants Beard and Wetzel. Williams simply lists Beard and Wetzel as

Defendants, but fails to mention them in the body of the complaint. Consequently, the

complaint against Corrections Defendants Beard and Wetzel is subject to dismissal. To the

extent that Williams attempts to hold Corrections Defendants Beard and Wetzel liable based

on their supervisory roles, this ground of *respondeat superior* liability has been squarely

rejected by the courts. *See Rode*, 845 F.2d at 1207. Accordingly, any claims against

Corrections Defendants Beard and Wetzel based on a *respondeat superior* theory of liability

will likewise be dismissed.

Regarding Corrections Defendants Sommers, Glunt, and Younkin, the complaint broadly alleges that Williams received inadequate medical care while housed at SCI-Houtzdale. (Doc. 1, ¶¶ 21-52). Williams sets forth claims of products liability, violation of constitutional rights, and negligence. However, Williams fails to indicate any product in relation to the products liability claim, fails to indicate the involvement of each individual Defendant, and fails to indicate the role each Defendant played in the alleged violation of his constitutional rights.

Williams generally alleges that, "Defendants at SCI Waymart were aware of all the above stated [medical issues], yet con[]tinued to do nothing to correct or make the above wrongs done plaintiff any better." (Doc. 1, ¶ 54). He then sets forth boilerplate allegations of "[r]etaliations, medical indifference, inadequate medical care, cruel and unusual punishments, atrocious lapses in the provision of medical care, inadequate and unconstitutional denials of proper medical care, etc.", and "[i]ncompetent, unqualified, cheap, [and] untrained . . . medical care." (Id. at ¶¶ 57, 59). These broad based assertions fail to lay out the personal involvement of each Corrections Defendant, and fail to specify which claims apply to which Defendant. These failures are fatal to Williams' claims against Corrections Defendants and they are entitled to dismissal on this ground.

7

## B.    Eighth Amendment Claim[1]

"The Cruel and Unusual Punishments Clause of the Eighth Amendment proscribes 'punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417 (3d Cir. 2000) (footnote omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). A prison official violates the Eighth Amendment when: (1) the prisoner suffers an objectively, sufficiently serious deprivation; and (2) the prison official acts with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Fortune v. Hamberger*, 379 Fed. Appx. 116, 122 (3d Cir. 2010) (stating, "an inmate [is required] to show that 'he is incarcerated under conditions posing a substantial risk of serious harm,' and that prison officials demonstrated a 'deliberate indifference' to his health or safety"). Under the first element, a "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. To establish deliberate indifference under the second element, the prison official must: (1) know of and disregard an excessive risk to inmate health or safety; (2) be aware of facts from which an inference

---

[1]    Because Williams sets forth the same allegations to establish both Fifth and Eighth Amendment claims, and because the Eighth Amendment "is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, [and] serves as the primary source of substantive protection to convicted prisoners," the more-specific-provision rule of the Eighth Amendment forecloses Williams' Fifth Amendment claim as a matter of law. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

8

could be drawn that a substantial risk of serious harm exists; and (3) draw the inference. *Id.* at 837. The subjective element "entails something more than mere negligence." *Id.* at 835.

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

Williams alleges that his Eighth Amendment rights were violated when Corrections Defendants subjected him to cruel and unusual punishment by providing inadequate medical care at SCI-Houtzdale and SCI-Waymart. (Doc. 1, ¶ 73). It is clear that Williams received medical care during the relevant time period. To the extent that Williams is not satisfied with the medical treatment and medications, such allegations, at best, demonstrate his disagreement with medical care. Williams acknowledges that he received medical treatment and "numerous" medications at SCI-Houtzdale, though he purportedly suffered an

9

allergic reaction to one medication. (Doc. 1, ¶ 16). The medical staff provided Williams with several medications to treat his self-reported complaints, *to wit*, Remeron, Tegretol, Elavil, and Elavil Amitriptyline. (*Id.* at ¶¶ 16-17). When Williams reported feeling ill in September 2011, he was immediately taken to the medical department, assessed by the medical staff and prescribed eye drops. (*Id.* at ¶ 21-22). He claims that his condition failed to improve and he was sent to an outside hospital on September 3, 2011. (*Id.* at ¶ 26). Upon his return to SCI-Houtzdale on September 7, 2011, Williams was placed in the prison infirmary for three weeks, and was prescribed eye drops, ointment for his hives, intravenous fluids, and oral tablets. (*Id.* at ¶ 30). The medical staff clearly did not refuse to provide medical care or medication.

Moreover, for purposes of Eighth Amendment medical claims, non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit as follows:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was

10

under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

*Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004). Courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. *See, e.g., id.* at 236-37 (citing *Durmer,* 991 F.2d at 69); *Garvey v. Martinez,* No. 08-2217, 2010 WL 569852, at *6-7 (M.D. Pa. 2010); *Hodge v. United States,* No. 06-1622, 2007 WL 2571938, at *5-6 (M.D. Pa. 2007). A claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode,* 845 F.2d at 1207.

Applying these constitutional benchmarks, it is apparent that, with respect to John Sommers (Superintendent of SCI-Waymart), Steven Glunt (Superintendent at SCI-Houtzdale), Debra Younkin (Corrections Health Care Administrator at SCI-Houtzdale), Jeffrey Beard (former Secretary of the Department), and John Wetzel (current Secretary of the Department), non-medical Defendants, Williams' complaint fails to state a claim upon which relief can be granted. Accordingly, Williams' Eighth Amendment claims against the

11

Corrections Defendants will be dismissed.

## C. Professional Liability Claim

Corrections Defendants Sommers, Glunt, and Younkin move to dismiss any pendent

state law professional liability claim against them, arguing that Williams has failed to comply

with the requirements of state law in lodging this claim. (Doc. 24, p. 15). Specifically,

Corrections Defendants Sommers, Glunt, and Younkin claim that Williams has failed to

comply with Pennsylvania Rule of Civil Procedure 1042.3 ("Rule 1042 .3"), by not filing a

valid certificate of merit with this professional liability claim. (*Id.*).

Rule 1042.3 provides, in pertinent part:

In any action based upon an allegation that a licensed professional deviated
from an acceptable professional standard, the attorney for the plaintiff, or the
plaintiff if not represented, shall file with the complaint or within sixty days
after the filing of the complaint, a certificate of merit signed by the attorney or
party that either

(1) an appropriate licensed professional has supplied a written
statement that there exists a reasonable probability that the
care, skill or knowledge exercised or exhibited in the treatment,
practice or work that is the subject of the complaint, fell outside
acceptable professional standards and that such conduct was a
cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable
professional standard is based solely on allegations that other
licensed professionals for whom this defendant is responsible
deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is
unnecessary for prosecution of the claim.

12

* * *

(d) The court, upon good cause shown, shall extend the time for filing a
certificate of merit for a period not to exceed sixty days. A motion to extend
the time for filing a certificate of merit must be filed by the thirtieth day after
the filing of a notice of intention to enter judgment of non pros on a
professional liability claim under Rule 1042.6(a) or on or before the expiration
of the extended time where a court has granted a motion to extend the time to
file a certificate of merit, whichever is greater. The filing of a motion to extend
tolls the time period within which a certificate of merit must be filed until the
court rules upon the motion.

PA. R. CIV. P. 1042.3(a), (d). The purpose of the required certificate of merit is to "assure

that malpractice claims for which there is no expert support will be terminated at an early

stage in the proceedings." *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

Rule 1042.3(a) applies to both *pro se* and represented plaintiffs and constitutes a

rule of substantive state law with which plaintiffs in federal court must comply. *See*

*Iwanejko v. Cohen & Grigsby, P. C.*, 249 F. App'x 938, 944 (3d Cir. 2007) (holding that

district courts must "appl[y] Rule 1042.3 as substantive state law"); *Paige v. Holtzapple*,

2009 WL 2588849, *3 (M.D. Pa. 2009) (citing *Iwanejko*, 249 F. App'x at 944); *Fernandez v.*

*Dep't of Justice*, No. 3:07-cv-1080, slip op. at 10 (M.D. Pa. Sept. 2, 2008) (recognizing that

the plaintiff's *pro se* status "is not a viable basis upon which to excuse compliance with Rule

1042.3 or the requirement of com[i]ng forth with expert medical testimony"). Failure to file a

certificate of merit under Rule 1042.3(a) or a motion for an extension under Rule 1042.3(d)

is fatal unless the plaintiff demonstrates that his failure to comply is justified by a

13

"reasonable excuse." *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008); *see also Walsh v. Consol. Design & Eng'g, Inc.*, 2007 WL 2844829, \*5 (E.D. Pa. 2007) ("Rule 1042.3 is subject to equitable considerations and a party who fails to timely file a certificate of merit may be relieved from the requirement where the defaulting party provides a reasonable explanation or legitimate excuse.").

In the instant case, Williams has not provided the Court with a certificate of merit required by Rule 1042.3, nor has he requested an extension of time in which to do so. Further, Williams has failed to present a reasonable explanation or legitimate excuse for noncompliance with the COM requirement. As a result, any professional liability claim against Corrections Defendants Sommers, Glunt, and Younkin will be dismissed.

## D. Negligence Claim

To demonstrate a *prima facie* case of negligence under Pennsylvania law, a plaintiff must show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) there is a causal connection between the breach and the resulting injury; and (4) the plaintiff suffered actual loss or damage. *See Krentz v. Consolidated Rail Corp.*, 589 Pa. 576, 910 A.2d 20, 27 (Pa. 2006).

In a conclusory fashion, Williams alleges that Defendants were negligent. (Doc. 1, ¶ 99). The complaint sets forth absolutely no facts establishing that any Corrections Defendants exhibited negligence, were involved in any medical decisions, or breached a

14

standard of care. Consequently, Corrections Defendants' motion to dismiss any claim of negligence will be dismissed.

### E.    Americans with Disabilities Act Claim

Corrections Defendants also seek dismissal with respect to Williams' claim under the Americans with Disabilities Act ("ADA"). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "public entity" as: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)." Id. § 12131(1). State prisons "fall squarely within" the ADA's definition of "public entity." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). However, the plain language of § 12132 applies only to public entities, not individuals. Yeskey v. Commonwealth, 76 F. Supp. 2d 572, 575 (M.D. Pa. 1999) (holding that individuals are not liable under Title II because it prohibits discrimination in programs of a "public entity" or discrimination "by any such entity" and "public entity" is not defined in Title II to include individuals). Thus, the ADA damages claims against the Corrections Defendants in their individual capacities will be dismissed. However, the ADA claims

15

against the Corrections Defendants in their official capacities remain. *Koslow v. Commonwealth of Pennylsvania*, 302 F.3d 161, 179 (3d Cir. 2002).

To establish an ADA claim, the plaintiff must establish that (1) he has a disability; (2) he was otherwise qualified to participate in the service, programs, or activity of the public entity; and (3) he was denied the benefits of the service, program, or activity or was otherwise subject to discrimination because of his disability. *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). Under Title II of the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* at § 12132(2). Further, the ADA defines a "disability" as (1) "a physical or mental impairment that substantially limits one or more major life activities of such [an] individual;" (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." *Id.* at § 12102(1)(A)-(c). The ADA provides that the term "disability" is to be liberally construed "in favor of broad coverage" "to the maximum extent permitted by the terms of [the] Act." *Id.* at § 12102(4).

Corrections Defendants argue that they are entitled to dismissal of the ADA claim

16

against them because Williams does not have a disability and he was not denied medical care but, rather, he received treatment for his allergic reaction. (Doc. 24, p. 17). Corrections Defendants further argue that Williams was not discriminated against or denied the opportunity to participate in any services or programs because of a disability. (*Id.*).

Assuming *arguendo* that Williams has a disability, the Corrections Defendants are nevertheless entitled to dismissal of the ADA claims against them. Williams has failed to establish that he was discriminated against or denied services, programs, or activities because of any disability. To the extent that Williams claims that he was denied medical treatment for his purported disability, such a claim fails under the ADA. *See Iseley v. Beard*, 220 F. App'x 137, 141 (3d Cir. 2006) ("Iseley does not claim that he was excluded from any program on the basis of his disability. Rather, he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."). Consequently, Corrections Defendants' motion to dismiss the ADA claim against them in their official capacities will be granted.

## F. Fourteenth Amendment Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)

17

(citing Plyer v. Doe, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman*, 221 F.3d at 423-24.

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams*, 343 F.3d at 221; *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

Williams does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect class). Therefore, Williams' claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Williams must establish that he has been treated differently from similarly situated inmates, that the defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate

18

penological interest. *Phillips*, 515 F.3d at 243. When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho*, 423 F.3d at 354-55); *see also Twombly*, 550 U.S. at 561 (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

Williams claims that defendants violated his Fourteenth Amendment rights by not providing him adequate medical care. (Doc. 1, ¶ 98). Williams has failed to present any evidence from which it can be concluded that the Corrections Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated persons on the basis of his age, race, nationality or gender. He has not established that the purported conduct was intentional, discriminatory treatment directed at just him. Instead, he presents conclusory statements that the Corrections Defendants had a "longstanding rule of abusing the Plaintiff . . . [which] appear to be intentional." (*Id.*).

19

Williams has failed to allege that he has been treated differently than similarly situated inmates. Consequently, Corrections Defendants' motion to dismiss the Equal Protection claim will be granted.

## G. Retaliation Claim

The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).

Williams asserts that Corrections Defendants retaliated against him for continually requesting adequate medical treatment. Inmates are entitled to adequate medical treatment. Thus, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

Once it is determined that the inmate was engaged in protected conduct, he must demonstrate that he has suffered some adverse action at the hands of prison officials. *See Rauser*, 241 F.3d at 333 (citing *Allah*, 229 F.3d at 225). To show an "adverse action," the plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002), quoting *Allah*, 229 F.3d at 225. Although not entirely clear in the complaint, Williams seemingly asserts that he suffered adverse action in the form of inadequate medical care. (Doc. 1, ¶ 98). Thus, Williams has satisfied the second *Rauser* prong.

In analyzing the third element, the Court must determine whether there is a causal connection between the exercise of the constitutional right and the adverse action. The plaintiff must show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Goff v. Burton*, 91 F.3d 1188 (8th Cir. 1996); *Pride v. Peters*, 72 F.3d 132 (Table) (7th Cir. 1995). It is plaintiff's burden to prove that defendants were motivated by retaliation. *Hannon v. Speck*, No. 87-3212, 1988 WL 131367, at *4 (E.D. Pa. Dec. 6, 1988) ("In bringing a § 1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor . . . was as he

21

alleged.") (internal quotes and citation omitted), *aff'd*, 888 F.2d 1380 (3d Cir. 1989) (Table). Where the prisoner seeks to establish this causal link based upon the temporal proximity between the protected conduct and the alleged retaliatory act, "the timing of the alleged retaliatory action must be unusually suggestive before a causal link will be inferred." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997); *Rauser*, 241 F.3d at 334; *see also Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (concluding that the temporal proximity, nearly six months, is not unduly suggestive and does not sufficiently establish any causal link). Although Williams claims that he requested medical care from September 2011 through the present, he failed to indicate when the alleged adverse actions took place. He has thus failed to establish any temporal proximity between the protected activity and alleged retaliatory conduct. Given the lack of any unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory conduct, Williams' retaliation claim fails as a matter of law and will be dismissed. Moreover, Williams failed to allege that any of the Corrections Defendants were involved in the alleged retaliatory acts. Instead, he generally states that the "Department of Corrections" has a policy of retaliating against inmates, such as Williams. (Doc. 1, ¶ 98). Williams failed to set forth any plausible facts to support a claim that any of the individually named Corrections Defendant denied him adequate medical care.

## H.     Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

Williams has concluded that Corrections Defendants conspired to violate his rights, yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Corrections Defendants to achieve this conspiracy. *See* (Doc. 1). Williams cannot rely on unsupported claims of conspiracy. In a conclusory fashion, the complaint states that "with respect to all . . . defendants, Pennsylvania employees or agents conduct

23

toward Plaintiff, defendant's official custom, policy, practice of abusing this plaintiff, is well documented and known since his inception into the medical system within, was (is) a conspiracy." (Doc. 1, ¶ 81). Without a factual showing which gives some substance to this conspiracy claim, Williams' conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)).

There are no averments in the complaint that reasonably suggest the presence of an agreement or concerted activity between the Corrections Defendants. Williams appears to assert that Corrections Defendants conspired to prevent him from receiving adequate medical care. However, he has not alleged any facts showing any communication or cooperation among any Corrections Defendants from which an agreement could be inferred. The Court finds that Williams' "bare, conclusory allegations" are insufficient to allege a conspiracy. *See Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred"). Moreover, because the

underlying constitutional claims will be dismissed, the Court will likewise dismiss Williams' claim for conspiracy to commit a constitutional violation. *See Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995) (determining that it is not necessary to reach the issue of conspiracy because plaintiff failed to allege cognizable violation of due process rights); *Samuel v. Clark*, 1996 WL 448229, at *4 (E.D. Pa. 1996) (dismissing conspiracy claim where underlying claims for fraud and discrimination were dismissed).

### I.    Sovereign Immunity

Corrections Defendants also seek to dismiss Williams' state law tort claims on the basis of sovereign immunity. (Doc. 24, pp. 22-23). State prison officials are immune from suit for those actions within the scope of their duties, except in instances in which the immunity has been specifically waived. *See* 1 PA. CONS. STAT. ANN. § 2310. The allegations of Williams' complaint do not fall under any one of the nine listed categories for which immunity has been waived by the Commonwealth of Pennsylvania.[2] *See* 42 PA. CONS. STAT. ANN § 8522(b). As such, Corrections Defendants are entitled to immunity on the state law tort claims and their motion will be granted in this regard.

### IV.    Leave to Amend

---

[2]    The nine categories for which sovereign immunity will not apply are: (1) vehicle liability; (2) medical professional liability; (3) care custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. *See* 42 PA. CONS. STAT. ANN. § 8522(b).

When a complaint fails to present a prima facie case of liability, district courts must

generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview*

*State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d

Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a

complaint is subject to dismissal for failure to state a claim, courts should liberally grant

leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515

F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set

forth above, and because Williams has failed to oppose the motion to dismiss, granting

leave to amend would be futile.

## V. Conclusion

Based on the foregoing, the Corrections Defendants' motion (Doc. 23) to dismiss will

be granted. A separate Order shall issue.

Date: August ____, 2017

Robert D. Mariani
United States District Judge

26